UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **LEMAN BRIDGES** | **CIVIL ACTION** |
| **VERSUS** | **NUMBER 07-490-FJP-DLD** |
| **MICHAEL ASTRUE,** | |
| **COMMISSIONER OF SOCIAL** | |
| **SECURITY ADMINISTRATION** | |

### MAGISTRATE JUDGE'S REPORT

Claimant seeks judicial review of a final partially favorable decision of the Commissioner regarding his claim for disability insurance benefits and supplemental security income (SSI) benefits, in which the claimant was found to be disabled as of October 29, 2005, the date the claimant's age category changed from a "younger individual" to "an individual approaching advanced age."[1]  The claimant contests the Commissioner's decision that he was not disabled prior to October 29, 2005.

Claimant specifically argues that the Commissioner failed to meet his burden of proof at Step 5 of the sequential analysis; that is, that there were significant jobs existing in the national economy that claimant could perform prior to October 29, 2005, given the claimant's limitations and residual functioning capacity ("RFC") as of that time. Claimant seeks either to remand or to reverse and amend the disability onset date to November 15,

---

[1] The claimant was forty-seven years old on the alleged onset date of disability, an age that is considered to be a "younger individual;" however, when his age category changed on his 50th birthday, the claimant was then considered to be an "individual closely approaching advanced age."  20 CFR 404.1563 and 416.963.

2003.  The Commissioner generally responds that any errors made were harmless and thus provide an insufficient basis to warrant remand.

## *Background*

On March 26, 2004, the claimant filed a claim for Title II disability benefits (DIB) and Title XVI supplemental security income benefits (SSI), alleging a disability onset date of November 15, 2003, due to nerve damage and poor vision.[2] (TR 54) On November 10, 2004, the claim was denied because the medical evidence indicated that although the claimant had discomfort, he was still able to move his "arms, hands, and legs in a satisfactory manner."  Further, although the claimant could not perform his past work, he could perform work requiring less physical effort. (TR 25). The claimant timely filed a request for a hearing, and the hearing was held on June 9, 2006.  The claimant and a vocational expert testified at the hearing.

After considering various medical records and the testimony of both the claimant and the vocational expert, the ALJ determined that the now 50-year old claimant had degenerative disc disease of the lumbar spine and right lower extremity sciatic neuropathy (20 CFR 404.1520(c) and 416.920(c))(TR 15), and that these impairments prevented the claimant from performing past relevant work as a laborer and boilermaker. The ALJ further determined that the claimant nonetheless had the residual functional capacity to perform the full range of unskilled sedentary work prior to October 29, 2005.  However, because claimant was re-classified as "approaching advanced age" (i.e., 50 years old) as of October

---

[2]The record indicates that claimant's poor vision was due to a cataract, which subsequently was corrected by surgery.  Poor vision is not an issue in this appeal and therefore will not be addressed by the court.

29, 2005, there no longer were significant numbers of jobs in the national economy that the claimant could perform; thus the Commissioner determined that the claimant was disabled as of that date.

In his partially favorable decision, the ALJ explained that if the claimant's RFC were to allow him to perform the full range of sedentary work prior to the date the claimant's age category changed, he would be considered "not disabled" under Medical-Vocational Rule 201.21. He considered the opinions of the medical and psychological consultants from the state agency who initially evaluated this issue and who determined that claimant could perform "light work." The ALJ, however, ultimately determined that the claimant's impairments caused somewhat greater limitations, and he correspondingly reduced claimant's performance ability to "sedentary work." (TR 17) The ALJ also recognized that the claimant had additional limitations which would impact his ability to perform all the aspects of the full range of sedentary work, and in order to determine the extent of the erosion of the unskilled sedentary work base due to these limitations, the ALJ posed a hypothetical scenario to the VE, taking into account claimant's age (50), education, work experience, and RFC:

> The claimant is currently age 50. He has a twelfth grade high school education. Let me ask you to assume his capacities and limitations pretty much as follows. That in terms of lifting and carrying that would be 20 pounds occasionally, and 10 pounds more frequently. Assume that his standing capacity is about 15 minutes at a time, and walk for about two to three minutes at a time, and assume that he could stand to walk and be on his feet not exceed three hours out of an eight hour work day. Assume that he could sit for periods of up to 30 minutes, and six hours out of an eight hour work day. He should not do work that required climbing, crawling, or kneeling. (TR 199-200)

The ALJ further stated to the VE:

> There was his onset date. He was slightly under age 50 at the time. I'm not sure. He was 49. I guess I need to inquire about whether or not there would be any unskilled sedentary employment with that RFC. (TR 204)[3]

In response to the hypothetical presented by the ALJ, the VE testified that a sewing machine operator was a unskilled sedentary position, of which there were 83 positions available in Louisiana, but he also stated that this was *not* a job that claimant could perform, given the restrictions regarding sitting, standing and walking. (TR 204) He also testified that there were other occupations that were unskilled, and required no transferable skills.[4] Those jobs were:

> General office clerks, sedentary. In the State of Louisiana, 795. Surveillance systems monitors are sedentary in the State of Louisiana, 135. And then one other example would be receptionists and information clerks sedentary. There are 1, 1, 150. (TR 204).

There were no further explanations from the VE nor questions from the ALJ. The VE did not describe the skills or tasks associated either with sedentary general office clerks or sedentary receptionists and information clerks. The VE also did not refer to or explain any conflicts or inconsistencies between his testimony and the information contained in the Dictionary of Occupational Titles (DOT). The ALJ, however, inexplicably wrote in his decision that the VE testified as follows:

> The vocational expert testified that given all these factors the individual would have been able to perform the requirements of representative occupations

---

[3]The ALJ originally believed there might be unskilled light jobs, but after hearing testimony from the VE, determined that claimant's RFC limited him to unskilled sedentary jobs only.

[4]The VE testified that the claimant had no transferable skills from his past relevant work due to the exertional levels his past work required. (TR 200-201) The claimant also had no clerical skills. (TR 203).

such as sewing machine operator, with 83 positions available regionally; general office clerk, with 795 positions regionally; surveillance systems monitor, with 135 positions regionally; and receptionist/information clerk, with 1,150 positions regionally. The vocational expert testified that there were no conflicts between the occupational evidence that he provided and information in the Dictionary of Occupational Titles, including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, published by the Department of Labor. (SSR 00-4p).

Relying on his version of the testimony of the VE and the record, the ALJ found that the claimant was not disabled until October 29, 2005, the date of claimant's fiftieth (50th) birthday, and the date upon which claimant became an individual "approaching advanced age."

### *The Governing Standard*

In reviewing the Commissioner's decision to deny benefits, the Court is limited to a determination of whether the Commissioner's decision was supported by substantial evidence existing in the record as a whole and whether the Commissioner applied the proper legal standards. *E.g., Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988). In applying the "substantial evidence" standard, the Court must carefully scrutinize the record to determine if, in fact, substantial evidence supporting the decision does exist, but the Court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for the Commissioner's even if the evidence preponderates against the Commissioner's decision. *Id.* Substantial evidence means more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support a conclusion. *Id.* A finding of "no substantial evidence" will be made only where

there is a conspicuous absence of credible choices or an absence of medical evidence contrary to the claimant's position. *Id.*

The overall burden of proving disability under the Social Security Act rests on the claimant. *Jones v. Heckler*, 702 F.2d 616, 620 (5th Cir. 1983). If a claimant proves that he no longer is able to work in his prior job, then the burden shifts to the Commissioner to show that there is some other type of substantial gainful activity that the claimant can perform. *Id.* Thus, in cases such as this one where the Commissioner determines that the claimant cannot perform his past relevant work and accordingly reaches the fifth step of the five-step disability sequential analysis, the Commissioner bears the burden of establishing that there is other work in the economy that the claimant can perform. *Perez v. Schweiker*, 653 F.2d 997, 999-1000 (5th Cir. 1981). If the Commissioner adequately points to potential alternative employment, the ultimate burden of persuasion then returns to the claimant to prove his inability to perform those jobs. *Kraemer v. Sullivan*, 885 F.2d 206 (5th Cir. 1989); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Fruge v. Harris*, 631 F.2d 1244, 1246 (5th Cir. 1980).

The Commissioner may satisfy his burden at step five to show that there is other gainful employment in the national economy that the claimant is capable of performing either by "reference to the Medical-Vocational Guidelines of the regulations or by expert vocational testimony or other similar evidence." *Bridges v. Commissioner of Social Sec. Admin,*, 278 F.Supp. 2d 797, 803 (5th Cir. 2003). In the Fifth Circuit, significant value is assigned to the education and experience of a vocational expert as compared to the DOT. *Vaughn v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995 (*per curiam*); *Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986) *(per curiam)*. However, the ALJ's discretion to choose between

VE testimony and conflicting evidence in the DOT is not unfettered. Each has "equal dignity and effect." *Romine v. Barnhart*, 454 F. Supp.2d 623, 115 Soc.Sec.Rep.Serv. 30 (E.D. Tex., 2006).

The ALJ has an affirmative responsibility to inquire as to conflicts between VE testimony and the information in the DOT. *Lopez v. Astrue*, 2008 WL 1820584 (N.D. Tex.) The ALJ must "obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and explain in the determination or decision how any conflict that has been identified was resolved." SSR 00-4p, 2000 WL 1898704, at*4; *Lopez, id.; Romine*, at 627. As part of the ALJ's duty to fully develop the record, the ALJ "will inquire, on the record, as to whether or not there is such consistency." SSR 00-4p, at 3. Explicit conflicts between VE testimony and the information contained within the DOT which are not examined and explained by the ALJ necessitate a remand and/or reversal. *Romine, id.*, *Baty v. Barnhart*, 512 F.Supp.2d. 881, at 891.

However, the claimant is only entitled to relief if he can show that he was prejudiced by the failure of the ALJ to follow SSR 00-4p and to address the conflicts between the VE testimony and the DOT information. *Groomer v. Commissioner of Social Security Administration*, 2008 WL 4092515 (W.D. La.); *Delon v.* Barnhart, 174 Fed.Appx. 201 (5th Cir. 2006), citing *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988); *Romine*, at 628.

***The Parties' Arguments***

The claimant argues that the Commissioner failed to carry his burden of proof at Step 5 of the evaluation in that the ALJ did not cite a significant number of unskilled sedentary jobs that the plaintiff could perform within his RFC. (rec. doc. 10)  The claimant contends that SSR 00-4p, which was actually cited by the ALJ in his opinion,  requires him to ask the VE to explain any discrepancies between the testimony and  the information in the DOT, including any conflicts in the strength or skill requirements of a particular job. Claimant argues this requirement is particularly   relevant in the instant matter because three of the four jobs identified by the VE were not unskilled sedentary jobs within the claimant's RFC, but rather were semi-skilled sedentary jobs outside of the claimant's RFC; thus, the ALJ's finding at step 5 is unsupported by substantial evidence.  Claimant  notes that the general office clerk and receptionist/information clerk are both semi-skilled clerical positions, and as such, should be eliminated from consideration, leaving claimant with only 135 surveillance systems monitor positions in the state.[5]

The Commissioner responds that the claimant failed to acknowledge that one of the information clerk  positions described in the DOT is an unskilled position having a SVP of 2, and that claimant's argument regarding lack of transferrable clerical skills is immaterial when the available positions are unskilled positions.[6]   Any error on the part of the Commissioner was thus harmless.  The Commissioner concludes that  once jobs are found in the national economy that the claimant can perform, the burden of proof shifts back to the claimant to rebut the finding.

---

[5]The parties agree that the position of sewing machine operator is not an unskilled sedentary position, and was erroneously cited by the ALJ.

[6]See DOT §237.367-046.

The claimant counters that citing to only two jobs in Louisiana with 1,285 openings (even if this is the interpretation of the VE's testimony) is not a significant number, and the VE testimony refers to a position identified in the DOT as receptionist/information clerk, which is a semi-skilled position. He further points out that the ALJ ran afoul of SSR 00-4p when he failed to resolve the conflict between the information in the DOT and the occupational evidence provided by the VE in that no DOT numbers or SVP numbers were identified by the VE in his testimony. In other words, it was impossible to tell specifically what jobs, if any, the VE considered.

### *Analysis*

Since the parties agree the claimant could work as a surveillance system monitor and that the ALJ was incorrect when he listed sewing machine operator as a job the claimant could perform, the court will address only the remaining jobs/categories: "receptionists and information clerks" and "general office clerks." These "jobs" cited by the VE are actually categories of jobs in the DOT listings. It is unclear from the administrative record precisely which particular jobs within those categories the claimant could perform. For example, when the VE testified about "receptionists and information clerks" and listed 1,150 existing in the regional economy, he failed to clarify whether he was referring to one position, two positions, or any number of positions. A review of the DOT titles indicates that "receptionists and information clerks" is a *category* consisting of 14 positions, only two of which have an SVP of 2 or lower (unskilled, sedentary level). There is no testimony in the record which explains whether the number provided by the VE was for the entire category (and thus included jobs outside the claimant's capabilities) or was for one or two jobs. In fact, the Commissioner in his brief can point to only one job within the general classification

of "receptionists and information clerks" which fell within the claimant's limitations, and did not further contend either that this one job is the one to which the VE testified, or that this one job had 1,150 positions in the state.  Similarly, "general office clerks" (795 available positions) is a category in the DOT consisting of 69 jobs, only 10 of which have an SVP of 2 or lower.

In addition to the ambiguity about the identity, number, and listed skill level of available positions,  the VE also failed to describe the specific skills and exertional levels required for either position, other than to say they were unskilled, sedentary jobs.  (TR 204).  The DOT classifies these jobs as unskilled, semi-skilled, and skilled, and it is patently unclear from the VE's testimony that he distinguished between the skill levels when listing these particular job categories.  Moreover, despite the ALJ's statements to the contrary, there is nothing in the hearing transcript that indicates the ALJ inquired about any conflicts between the VE's testimony and the information contained within the DOT, nor did the VE testify about any conflicts, indirect or direct, between his testimony and the DOT.   In fact, the Commissioner acknowledges in the pleadings that there really were only two jobs available, and does not explain adequately which two jobs were the ones about which the VE testified.  This discrepancy between the VE's testimony and the DOT is simply one of several unresolved conflicts.

Regardless of conflict, however,  the ALJ may, in certain circumstances,  rely on either the VE testimony or the DOT in determining whether claimant can make an adjustment to other work based on his RFC.[7]  Further, the ALJ, in appropriate cases, may give greater weight to VE testimony than to the DOT, in part because the DOT provides

---

[7] 20 C.F.R. §404.1566(d), (e) (2005).

only standardized job information, whereas the VE's testimony considers a particular claimant's situation as presented in the ALJ's hypothetical question.[8]  However, the Fifth Circuit has adopted a middle ground approach in that neither the DOT nor VE testimony is necessarily controlling, especially since the time of SSR 00-4p.[9] Thus, while significant value may be assigned to the VE's testimony as compared to the DOT information, SSR 00-4p still requires the ALJ to identify and to resolve the conflicts between  the VE's testimony and the DOT as  part of the ALJ's duty to fully develop the record.

Additionally, while Social Security Rulings are the internal policies of the Commissioner and lack the force of law and therefore are not binding on the court, the Rulings are "binding on all components of the Social Security Administration."[10] And, while the Fifth Circuit has not issued a precedential decision as to whether an ALJ's disregard for SSR 00-4p constitutes legal error, other circuit courts have done so.  These courts have generally concluded that error results from the failure of the ALJ to fulfill his affirmative responsibility to identify and address any conflicts.[11]

Therefore, claimant's argument that the ALJ failed to fully develop the record when he did not address the conflicts between the VE's testimony and the information in the DOT

---

[8]*Carey v. Apfel*, 230 F 3d 131, 146 (5th Cir. 2000). *Carey* addressed an implied or indirect conflict, which is not the case here, as the conflict in this matter is a direct one.

[9]SSR 00-4p states, in pertinent part, that before relying on VE or VS evidence to support a disability determination or decision, adjudicators must: "Identify and obtain a reasonable explanation for any conflicts between occupational evidence provided by VEs or VSs and information in the Dictionary of Occupational Titles (DOT), including its companion publication, the Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles (SCO), published by the Department of Labor, and explain in the determination or decision how any conflict that has been identified was resolved." *See also, Romine*, *Id.*

[10]20 CFR § 402.35(b) (2005).

[11]*Rutherford v. Barnhart*, 399 F.3d 546, 557 (3d Cir. 2005); *Hackett v. Barnhart*, 395 F.3d 1168, 1174-75 (10th Cir. 2005); *Burns v. Barnhart*, 313 F.3d 113, 127 (3d Cir. 2002), *Prochaska v. barnhart*, 454 F.3d 731 (7th Ci. 2006).

is a valid one.  In this case, the ALJ simply adopted the conclusory statements of the VE, without inquiring into the skills and exertional levels required by any of the four named positions (or more accurately, categories), and he did not identify any conflicts or the resolution of such conflicts.  He clearly was aware of his duty to make such an inquiry, as evidenced by his erroneous statement in his ruling that the VE had testified that there were no such conflicts.

Obviously, there are many, many DOT titles that contain the words "information clerk," and those jobs have different exertional levels and SVP's.  If the VE had testified with more detail or discussed the DOT descriptors, the end result might have been different for the claimant.  As it stands, however, the court is unable to determine whether or not there were a significant number of jobs available in the national economy which the claimant could perform.

The inability to determine the number of jobs available is not harmless error because if there were not  significant numbers of jobs in the national economy which the claimant could perform prior to October 29, 2005, he would have been found to be disabled as of an earlier date.  The decision at step five of the sequential evaluation process that claimant was not disabled before October 29, 2005, is therefore unsupported by substantial evidence.[12] Without clarification of the apparent conflicts, there is no way to determine, one way or the other,  what the final resolution should be.

***Recommendation***

The claimant has demonstrated error in the ALJ's failure to comply with a governing Ruling, and has demonstrated prejudice by showing there may have been a different

---

[12]There is no argument between the parties that claimant was disabled as of October 29, 2005.

outcome had the Ruling been followed. Because this error occurred when there was a direct and obvious conflict between the VE testimony and the information in the DOT, and was at a time when the burden of proof was on the Commissioner, the Magistrate Judge recommends that the decision be **REMANDED** with instructions to reconsider the vocational evidence pursuant to SSR 00-4p for the period of time from November 15, 2003, through October 29, 2005.

The Magistrate Judge further recommends that the Commissioner be directed to forward a copy of the Court's opinion and report to the next ALJ hearing this matter on remand.

Signed in Baton Rouge, Louisiana, on September 18, 2008.

**MAGISTRATE JUDGE DOCIA L. DALBY**

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**LEMAN BRIDGES**                                                    **CIVIL ACTION**

**VERSUS**                                                                   **NUMBER 07-490-FJP-DLD**

**MICHAEL ASTRUE, COMMISSIONER**
**OF SOCIAL SECURITY**
**ADMINISTRATION**

## NOTICE

Please take notice that the attached Magistrate Judge's Report has been filed with the Clerk of the U.S. District Court.

In accordance with 28 U.S.C. §636(b)(1), you have ten days from date of receipt of this notice to file written objections to the proposed findings of fact and conclusions of law set forth in the Magistrate Judge's Report. A failure to object will constitute a waiver of your right to attack the factual findings on appeal.

**ABSOLUTELY NO EXTENSION OF TIME SHALL BE GRANTED TO FILE WRITTEN OBJECTIONS TO THE MAGISTRATE JUDGE'S REPORT.**

Signed in Baton Rouge, Louisiana, on .September 18, 2008

**MAGISTRATE JUDGE DOCIA L. DALBY**